Layne Friedrich (Bar No. 195431)
  E-mail: layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
  E-mail: drev@lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Michael Lozeau (Bar No. 142893)
  E-mail: michael@lozeaudrury.com
Douglas Chermak (Bar No. 233382)
  E-mail: doug@lozeaudrury.com
LOZEAU | DRURY LLP
410 12th Street, Suite 250
Oakland, California 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF REDDING, a municipality,<br><br>        Defendant. | Case No.: 2:12-cv-01884-GEB-KJN<br><br>**[PROPOSED] CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251** *et seq.***)** |

## **CONSENT DECREE**

Plaintiff California Sportfishing Protection Alliance ("CSPA"), and Defendant City of Redding ("City") hereby enter into this Consent Decree. The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Sacramento River, its tributaries, and the Sacramento-San Joaquin River Delta;

**WHEREAS**, the City is a municipal corporation and is the permittee on the following permits: (1) Waste Discharge Requirements for City of Redding, Clear Creek Wastewater Treatment Plant, Order No. R5-2003-0130, NPDES Permit No. CA0079731 ("2003 Clear Creek NPDES Permit"); (2) Waste Discharge Requirements for the City of Redding, Clear Creek Wastewater Treatment Plant, Order No. R5-2010-0096, NPDES Permit No. CA0079731 ("2010 Clear Creek NPDES Permit"); (3) Waste Discharge Requirements for the City of Redding, Stillwater Wastewater Treatment Facility, Order No. R5-2007-0058, NPDES Permit No. CA0082589 ("2007 Stillwater NPDES Permit"); and (4) Waste Discharge Requirements (WDRs) for Storm Water Discharges From Small Municipal Separate Storm Sewer Systems (General Permit), State Water Resources Control Board, Order No. 2003–0005–DWQ, NPDES Permit No. CAS000004 ("MS4 Permit");

**WHEREAS**, the City owns and operates a municipal sanitary sewer system, including two wastewater treatment plants, Clear Creek Wastewater Treatment Plant ("Clear Creek WWTP") and the Stillwater Wastewater Treatment Plant ("Stillwater WWTP") and associated wastewater collection systems;

**WHEREAS**, on May 7, 2012, CSPA issued a sixty (60)-day notice letter ("Notice Letter") to the City. The Notice Letter informed the City of CSPA's intention to file suit against the City for alleged violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*, ("Clean Water Act"). The Notice Letter specifically notified the City of its alleged violations of (1) the 2003 Clear Creek NPDES Permit, (2) the 2010 Clear Creek NPDES Permit, (3) the 2007 Stillwater NPDES Permit, (4) the MS4 Permit and (5) section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for the City's alleged unpermitted discharges of raw or partially treated sewage from the City's sewage collection system to

waters of the United States;

**WHEREAS**, on July 17, 2012, CSPA filed its complaint in the United States District Court for the Eastern District of California ("District Court") against the City, Case No. 2:12-cv-01884-GEB-KJN (hereinafter "Complaint");

**WHEREAS**, the City denies CSPA's allegations that it has violated the Clean Water Act and/or any of the allegations in the Complaint;

**WHEREAS**, on August 7, 2012, the Regional Water Quality Control Board, Central Valley Region ("Regional Board") and the City entered into a settlement entitled *Settlement Agreement and Stipulation for Entry of Order; Order* to settle Regional Board claims against the City related to certain sanitary sewer overflows ("SSOs"). The regional Board subsequently noticed the [Proposed] settlement for public comment;

**WHEREAS**, the Regional Board formally adopted the *Settlement Agreement and Stipulation for Entry of Order; Order* ("Regional Board Settlement Order") on December 6, 2012, as Order No. R5-2012-0112;

**WHEREAS**, in the Regional Board Settlement Order, the City agreed to the imposition of One Million Four Hundred and Fifty Thousand Dollars ($1,450,000.00) in administrative civil liability, including Eight Hundred Thousand Dollars ($800,000.00) toward a Supplemental Environmental Project ("SEP"), Two Hundred and Twenty Five Thousand Dollars ($225,000.00) to the State Water Pollution Cleanup and Abatement Account, Twenty-One Thousand Dollars ($21,000.00) in mandatory minimum penalties, and the balance in stipulated penalties;

**WHEREAS**, in the Regional Board Settlement Order, the City and the Regional Board agreed that Eight Hundred Thousand Dollars ($800,000.00) of the administrative civil liability will be suspended pending SEP completion ("SEP Suspended Liability") and that Four Hundred and Twenty-Five Thousand Dollars ($425,000.00) shall be suspended and progressively waived pending completion of SEP project milestones ("Suspended Liability"). The SEP Suspended Liability and Suspended Liability amounts will be waived upon the City's completion of the Private Sewer Lateral Replacement Program and by meeting the Private Sewer Lateral SEP deliverables' goals in a timely fashion;

**WHEREAS**, under the Regional Board Settlement Order, the SEP will focus on capacity related

problems at the Clear Creek and the Stillwater WWTPs. The SEP will include a Private Sewer Lateral Replacement Program, with the goal being to reduce inflow and infiltration ("I/I"). The Regional Board ordered that, "A reduction in I/I will benefit surface water quality and beneficial uses by decreasing the number and volume of spills of untreated or partially treated sewage from the [City's] collection system to surface waters during wet weather. In addition, the program will reduce the amount of flow to the Clear Creek and Stillwater WWTPs during wet-weather events . . .";

**WHEREAS**, under the Regional Board Settlement Order, the City agreed to complete the Private Sewer Lateral Replacement Program by February 1, 2018 and to implement the SEP in accordance with the applicable schedule and milestone dates. The City also agreed to fund the SEP, provide certifications and written reports to the Regional Board detailing SEP implementation, and to guarantee SEP implementation by remaining liable for the SEP Suspended Liability until the SEP is completed and the Regional Board accepts the SEP, in accordance with the Regional Board Settlement Order;

**WHEREAS**, under the Regional Board Settlement Order, if the City fails to expend all of the SEP Suspended Liability funds on the approved SEP, "the [City] shall pay the difference between the SEP Suspended Liability and the amount [the City] can demonstrate was actually spent on the SEP as an administrative civil liability";

**WHEREAS**, this Consent Decree addresses specifics related to the City's operation and maintenance of its collection system not fully addressed by the Regional Board Settlement Order;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of CSPA's asserted claims or admission by the City of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the costs and uncertainties of further litigation;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties each hereby agree as follows:

## I.   GENERAL OBJECTIVES

1. The objective of this Consent Decree is to assure that the City continues to maintain and improve the operation of its Collection System and maintain its current spill performance, which is

currently less than three (3) SSOs per 100 miles of sewer pipe per year.

## II.   JURISDICTION AND VENUE

2. For purposes of settlement, the Settling Parties stipulate to the District Court's jurisdiction to enter and retain jurisdiction over the Settling Parties to enforce the terms of this Consent Decree if necessary.

## III.   EFFECT OF CONSENT DECREE

3. CSPA does not, by its agreement to this Consent Decree, warrant or aver in any manner that the City's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the City to comply with all applicable Federal, State and local laws and regulations governing any activity required by this Consent Decree.

4. Nothing in the Consent Decree shall be construed as an admission by the City, and the Consent Decree does not intend to imply any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree be construed as an admission by the City of any fact, finding, conclusion, issue of law, or violation of law.

## IV.   APPLICABILITY

5. The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. Each Settling Party certifies that its undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the respective Settling Party, and to legally bind the respective Settling Party to its terms. The Settling Parties agree not to contest the validity of this Consent Decree in any subsequent proceeding to implement or enforce its terms.

6. No change in ownership or corporate or other legal status of the City or any transfer of the City's assets or liabilities shall in any way alter the responsibilities of the City or any of its successors or assigns thereof, under this Consent Decree. In any action to enforce this Consent Decree, the City shall not raise as a defense the failure by any of its agents, servants, contractors, employees, and successors or assigns to take actions necessary to comply with this Consent Decree.

## V.   AGENCY REVIEW AND TERM OF THE CONSENT DECREE

7. CSPA shall submit this Consent Decree to the United States Department of Justice and

the United States Environmental Protection Agency (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

8.     The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

9.     This Consent Decree will terminate three (3) years from the Effective Date.

## VI.    SEWER CONDITION ASSESSEMENT

10.    Within three (3) years of the Effective Date, the City shall complete closed-circuit television ("CCTV") inspection of pipes more than ten (10) years old, not inspected in the last ten (10) years, and less than ten (10) inches in diameter.

## VII.   ROOT CONTROL

11.    Immediately upon the Effective Date, whenever it is determined that a sewer segment is effected by root intrusion, the City shall place the sewer segment on the Chemical Root Control Program List. Following placement on the Chemical Root Control Program List, the sewer segment shall be mechanically cleaned at least every three months, or more frequently depending on severity of root intrusion, until chemical root treatment is completed.

## VIII.  CAPITAL IMPROVEMENT PROJECTS

12.    Capital Improvement Projects:

   a. The City has proposed completion of the capital improvement projects listed in Attachment A by July 2015, or as reasonably possible thereafter:

   b. The City has committed to beginning the following capital improvement projects listed in Attachment A, either before or as reasonably possible after July 2015:

   c. The City agrees to fund all capital improvement projects listed in Attachment A. The Settling Parties understand and agree that unforeseen infrastructure repairs and/or

replacement projects may arise, such as a sewer lift station failure and/or collapsed sewer main, that would require the City to reprioritize one or more of the capital improvement projects listed in Attachment A.

## IX.    MITIGATION PAYMENT

13.    Mitigation Payment. To remediate alleged environmental harms resulting from the allegations in the Complaint, the City shall pay to the Rose Foundation for Communities and the Environment the total sum of Forty Five Thousand Dollars ($45,000.00) ("the Mitigation Payment") to be used to fund environmental project activities that will benefit the Sacramento River and its tributaries. The Mitigation Payment shall be made within sixty (60) days of the Effective Date of this Consent Decree, and mailed to: Rose Foundation for Communities and the Environment, 1970 Broadway, Suite 600, Oakland, California 94612-2218, Attention: Tim Little.

## X.    REIMBURSEMENT OF LITIGATION COSTS

14.    Litigation Fees and Costs. To help defray CSPA's attorneys, consultant, and expert fees and costs, and any other costs incurred as a result of investigating, filing this action, and negotiating a settlement, the City shall pay CSPA the sum of Seventy Five Thousand Dollars ($75,000.00), which shall include attorneys' fees and costs for services performed by and on behalf of CSPA by its attorneys and consultants up to and through the Effective Date of this Consent Decree. Payment shall be made within thirty (30) days of the Effective Date of this Consent Decree and made payable to "*Lawyers for Clean Water Attorney Client Trust Account*." The payment shall be sent via overnight delivery addressed to: 1004-A O'Reilly Avenue, San Francisco, California 94129, and shall constitute full payment for all costs of litigation incurred by CSPA that have or could have been claimed in connection with or arising out of CSPA's lawsuit up to and including the Effective Date.

## XI.    BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

15.    <u>Force Majeure</u>. The City shall notify CSPA pursuant to the terms of this Paragraph, when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in this Consent Decree, becomes impossible, despite the timely good faith efforts of the City, due to circumstances beyond the control of the City or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by the City. Any delays due to the City's failure

to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree in normal inclement weather shall not, in any event, be considered circumstances beyond the City's control. Financial inability shall not, in any event, be considered circumstances beyond the City's control.

      16.    If the City claims Force Majeure, it shall notify CSPA in writing within thirty (30) days of the date that the City first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date the City should have known of the event or circumstance by the exercise of due diligence. The notice shall describe the reason for the non-performance and specifically refer to this Section of this Consent Decree. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by the City to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. The City shall adopt all reasonable measures to avoid and minimize such delays.

      a.    The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of the City, due to circumstances beyond the City's control that could not have been reasonably foreseen and prevented by the exercise of due diligence by the City, new performance deadlines shall be established.

      b.    If CSPA disagrees with the City's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party shall have the right to invoke the Dispute Resolution Procedures pursuant to Paragraphs 17 and 18 of this Consent Decree. In such proceeding, the City shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by Force Majeure and the extent of any delay attributable to such circumstances.

      17.    <u>Dispute Resolution Procedures</u>. If a dispute under this Consent Decree arises, or any Settling Party believes that a breach of this Consent Decree has occurred, the Settling Parties agree to engage in Dispute Resolution Procedures as follows:

      a.    The Settling Parties shall meet and confer (telephonically or in-person) within ten (10) days of receiving written notification of a request for such meeting. During the meet and confer

proceeding, the Settling Parties shall discuss the dispute and make best efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute. The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond ten (10) days.

    b. If any Settling Party fails to meet and confer within the timeframes set forth herein, or the meet and confer does not resolve the dispute, after at least ten (10) days have passed after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to pursue the resolution of the dispute by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in the District Court, before the Honorable Garland E. Burrell, Jr., or the District Court Judge otherwise assigned to his matter at that time. The purpose of the Motion is to determine whether either party is in breach of this Consent Decree and, if so, to require the breaching party to remedy any breach identified by the District Court. The Settling Parties agree to stipulate to an expedited review of the Motion by the Court if requested by any Settling Party. If Garland E. Burrell, Jr. is not available to perform the role identified herein, the Settling Parties agree that the Motion shall be re-assigned pursuant to applicable rules of the District Court.

  18. Litigation costs and fees incurred in addressing and/or resolving any informal or formal dispute, including an alleged breach of this Consent Decree, shall be awarded in accordance with the standard established by section 505 of the Clean Water Act, 33 U.S.C. § 1365, and case law interpreting that standard.

### XII. NOTICES AND SUBMISSIONS

  19. Any document or notice related to this Consent Decree shall be directed to the following individuals at the addresses specified below unless specifically stated otherwise herein. Any change in the individuals or addresses designated by any party must be made in writing to all Settling Parties.

    If to CSPA:

    Drevet Hunt
    Lawyers for Clean Water, Inc.
    1004 O'Reilly Avenue
    San Francisco, California 94129
    Telephone: (415) 440-6520
    Email: drev@lawyersforcleanwater.com

    Bill Jennings
    3536 Rainier Avenue
    Stockton, California 95204
    Telephone: (209) 464-5067
    Email: deltakeep@me.com

    <u>If to the City of Redding</u>:

    Kanwarjit (Jit) S. Dua
    Somach Simmons & Dunn
    500 Capitol Mall, Suite 1000
    Sacramento, California 95814
    Telephone: (916) 446-7979
    Email: kdua@somachlaw.com

    Brian Crane, Public Works Director
    City of Redding
    777 Cypress Avenue
    Redding, California 96001
    Telephone: (530) 225-4000
    Email: bcrane@ci.redding.ca.us

  20.  During the life of this Consent Decree, the City shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

  21.  Any notice, report, certification, data presentation or other document submitted by the City to CSPA pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated by a responsible official:

    I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

### XIII. MUTUAL RELEASE OF LIABILITY

  22.  Upon the District Court's approval and entry of this Consent Decree, the City and CSPA and each of their respective successors, assigns, directors, officers, agents, attorneys, representatives, and employees, release all persons from, and waive all claims for, injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any

other sum incurred or claimed in this action up to the Effective Date of this Consent Decree. Except as agreed to herein, this release includes a release, and covenant not to sue, for any claims of injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs, expenses or any other sum incurred or claimed based on facts or allegations set forth in the Notice Letter and/or Complaint up to the Effective Date of this Consent Decree.

23. Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before any judicial or administrative body on any other matter relating to the City.

### XIV. MISCELLANEOUS PROVISIONS

24. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms have a specific meaning under the Clean Water Act.

25. Choice of Law. The laws of the United States shall govern this Consent Decree.

26. Severability. In the event that any provision, Paragraph, Section, or sentence of this Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

27. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, scanned copies (i.e., PDF) and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

28. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

29. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

30. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

The Settling Parties hereby enter into this Consent Decree.

APPROVED AS TO CONTENT:                    CALIFORNIA SPORTFISHING
                                           PROTECTION ALLIANCE

Date: May 9, 2013                 By:      /s/Bill Jennings (original signature retained by
                                           Plaintiff's counsel)
                                           Bill Jennings
                                           Executive Director

Date: May 12, 2013                         CITY OF REDDING

                                  By:      /s/Rick Bosetti (original signatures retained by
                                           Defendant's counsel)
                                           Rick Bosetti
                                           Mayor

APPROVED AS TO FORM:

Date: May 9, 2013                          LAWYERS FOR CLEAN WATER, INC.

                                  By:      /s/Layne Friedrich
                                           Layne Friedrich
                                           Drevet Hunt
                                           Attorneys for Plaintiff
                                           California Sportfishing Protection Alliance

Date: May 9, 2013                          SOMACH SIMMONS & DUNN

                                  By:      /s/Kanwarjit S. Dua (as authorized on May 9, 2013)
                                           Kanwarjit S. Dua
                                           Attorneys for Defendant
                                           City of Redding

IT IS SO ORDERED

**Date: 7/9/2013**

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

# Attachment A

# ATTACHMENT A

## City of Redding Wastewater Utility
## Capital Projects July 2013 Through July 2015

| \ | Construction Complete Prior to July 2015 | |
|---|---|---|
| **CIP#** | **Project Title** | **Project Cost** |
| WW-2011-08 | Park Marina Dr. Sewer Replacement | $1,260,859 |
| WW-2011-10 | Churn Creek Lift Station Improvements | $358,000 |
| LS-CC-24 - 25 | Sunnyhill Lift Station Improvements | $643,000 |
| WW-2011-06-01 | West St. Sewer Replacement | $1,250,000 |
| TP-S-1 | Stillwater Wastewater Treatment Plant Expansion 1A/1B | $9,259,200 |
| WW-2005-17-10 | Clear Creek Wastewater TP Expansion Bid Package 5 | $15,837,000 |

| \ | Project Development and/or Construction Scheduled Prior to July 2015 | |
|---|---|---|
| **CIP#** | **Project Title** | **Project Cost** |
| WW-2011-07 | Trinity St. Sewer Replacement | $900,000 |
| WW-2005-17-12 | Clear Creek Wastewater TP Expansion Bid Package 7 | $4,022,665 |
| P-CC-24 | Mesa Alley Sewer Replacement | $585,000 |
| P-CC-22 | San Francisco Dr. Area Sewer Replacement | $500,000 |
| WW-2011-12 | Clear Creek Wastewater TP Solids Handling Facilities | $6,600,000 |
| WW-2011-03 | Private Lateral Replacement SEP (Participating Costs) | Up to $300,000/yr |

|  | **Total Project Completion Cost** | **$28,608,059** |
|---|---|---|
|  | **Total Project Development or Under Construction Cost*** | **$12,607,665** |

*Does not include the Private Lateral Replacement SEP